**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JARED HESTER,                             :

                     :

        Plaintiff,                    :

                     :

                     :

        v.                       :

                     : Case No. 8:22-CV-00128-TDC

                     :

COUNTY COUNCIL OF PRINCE GEORGE'S   :

PUBLIC SCHOOLS,                 :

                     :

        Defendant.                 :

                     :

_____

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND MEMORANDUM OF LAW**

Plaintiff, Jared Hester (hereinafter "Plaintiff" or "Mr. Hester"), by and through the undersigned counsel, pursuant to Fed. R. Civ. P 56, Rule 56(s)(B)(i) hereby files this response in opposition to Defendant Prince George's County Public School's (hereinafter "Defendant" or "PGCPS") Motion for Summary Judgment. Mr. Hester respectfully submits that Summary Judgment is not appropriate as there are material facts in dispute. Therefore, Mr. Hester respectfully request this Honorable Court deny Defendant's Motion for Summary in its entirety for the reasons set forth below.

## I.      INTRODUCTION

Plaintiff Jared Hester filed this instant action against Defendant PGCPS and other individual defendants on January 14, 2022 alleging violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. 2000e, et seq.* (Title VII") asserting claims of race, religion, national origin, sexual orientation discrimination as well as a hostile work environment and retaliation. (ECF 1) His claims against individual defendant, Shauna

1

Battle, Esq., Senior Hearing Administrator, Amana Simmons, Esq., former EEO Advisor, and Andrew Brauer, Acting Principal at PGCPS Chesapeake Math and IT Academy North ("CMIT-North") were voluntarily dismissed by Plaintiff in his amended complaint filed February 8, 2022. (ECF 6). Plaintiff subsequently filed another Amended Complaint (ECF 24) on July 8, 2022 per order of the Court dated June 28, 2022. (ECF 22).

Pursuant to the Court Order dated October 12, 2022 (ECF 31), Mr. Hester's claims of race, national origin, and religion discrimination were dismissed. The only claims remaining before this Honorable Court are Mr. Hester's claims of discrimination based on sexual orientation, disparate treatment, a hostile work environment, and retaliation. (ECF 31 p. 24).

## II.     PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

Mr. Hester was hired as a Spanish teacher at Prince Georges County Public School ("PGCPS"), Chesapeake Math and IT North Charter Middle School ("CMIT-North") in July 2016 (ECF 24 ¶ 1). From the onset of his employment Mr. Hester experienced discrimination, a hostile and harassing working environment, and disparate treatment based on his sexual orientation (homosexual male) (ECF 24 ¶ 2). Mr. Hester was further retaliated against when he was terminated in June 30, 2018 for his alleged expired teaching credentials, when in fact Defendant terminated Mr. Hester before Human Resources made a decision on whether or not to renew Mr. Hester's conditional teaching credentials. (ECF 24 ¶ 19; Ex A: Confidential Emails). In fact, Mr. Hester was terminated on June 30, 2018, but his teaching credential were renewed by the PGCPS on July 18, 2018. (Ex. A p. 6).

At all times relevant, Assistant Principal Andrew Brauer ("Mr. Brauer") was Mr. Hester's immediate supervisor at CMIT-North. It is undisputed that throughout his employment, Mr. Hester complained to PGCPS not only being discriminated against by Mr. Brauer, but also by students at the school, based on his sexual orientation (ECF 24 ¶ 15). At no time did Mr. Brauer or Assistant Principal Mr. James Screven ("Screven") take Mr. Hester's complaints of discrimination seriously. They dismissed his complaints of discrimination and feeling unsafe at work. In fact, Mr. Brauer made a derogatory comment that, "what [Mr. Hester did] on [his] own time [was] none of our business." (ECF 24 ¶ 15). Further, after a student made death threats against Mr. Hester for being gay and Jewish, PGCPS admits that Mr. Brauer returned the hostile and harassing student to Mr. Hester's classroom (following the student's suspension). (ECF 24-5 pp. 27-28). Furthermore, Defendant admits in its Motion to Dismiss that Mr. Hester filed complaints that they did not find credible or lacked evidence to support any kind of discipline. (ECF 26-1 p. 17).

The discriminatory, hostile, and harassing behavior was so severe and pervasive that Mr. Hester resigned in December 2017 but later requested his job back. (ECF 24-5 pp. 27-28). After returning to work in January 2018, Mr. Brauer refrained from treating Ms. Hester disparately until March 2018, at which time Mr. Brauer's unlawful conduct escalated against Mr. Hester, which included but was not limited to Mr. Brauer giving Mr. Hester unwarranted low performance scores; Mr. Brauer physically grabbing Mr. Hester; and Mr. Brauer making an inappropriate sexual comment to Mr. Hester by using the word "oral" in a sexually suggestive way. (ECF 24 ¶5).

3

It should be noted that Mr. Hester has several witnesses, who are still employed by Defendant, who will testify as to either witnessing Mr. Brauer's unlawful treatment toward Mr. Hester, or to the fact that Mr. Hester complained to them of the unlawful discrimination he was enduring by Mr. Brauer and students based on his sexual orientation. Those witness include, but are not limited to Lauren Chestang; Barbara Cabera-Avila; Stephanie Sheiman; Mehmet Gunes; Justine Fagan, his union representative; Tammy Colandrea; and Joseph Gruber.

### A.    Plaintiff Was Not Terminated For Performance and Defendant's Reason for Termination is Pretext for Discrimination, Retaliation.

PGCPS asserts Mr. Hester was an underperforming teaching who was on a growth plan (ECF 70-1(B)). Mr. Hester does not dispute that he had some performance issues, but asserts Mr. Brauer failed to engage him in his growth plan and that his performance suffered due to the ongoing unlawful discrimination and hostile work environment (ECF 24).

Defendant in its Motion for Summary Judgment is attempting to use Mr. Hester's performance issues to deflect away from Mr. Hester claims of discrimination and retaliation. Defendant's reason for terminating Mr. Hester is pretext to discrimination and retaliation. Mr. Hester **was not terminated for performance** (Def.'s Motion for Summary Judgment, p. 3). Defendant terminated Mr. Hester for allegedly having an expired conditional teaching certificate. (Id.). In fact, Defendant terminated Mr. Hester prior to the district making a decision as to whether Mr. Hester's certificate should be renewed for another year. (Ex. A: Confidential Emails). Defendant terminated Mr. Hester by letter on June 30, 2018 due to his expired conditional teaching certificate. However, on July 18, 2018, PGCPS's Human Resources renewed Mr. Hester's credentials for

4

another year. Thus, PGCPS terminated Mr. Hester without cause. The July 18, 2024 email from PGCPS Human Resources notified Mehmet Gunes that Mr. Hester's conditional teaching certificate had been renewed for another year, along with three other teachers. None of the other teachers (all heterosexual and no protected activity) were issued letters of termination. (Ex. A p. 6).

Defendant tries to further deflect from Mr. Hester discrimination and retaliation claims by stating Mr. Hester resigned after receiving the letter of termination. While Mr. Hester did resign after receiving the untimely and unwarranted termination letter, he did so in lieu of having a termination show up on his employment record. Mr. Hester did not know at the time of his resignation on July 15, 2018, that his teaching credentials would be renewed by PGCPS on July 18, 2024. (Ex. A p. 6).

Finally, Defendant fails to disclose Mr. Brauer's discriminatory and retaliatory animus toward Mr. Hester. Prior to issuing Mr. Hester the letter of termination, Mr. Brauer wrote to PGCPS's HR and asked them not renew Mr. Hester's teaching credential. Mr. Brauer's request was made under the pretext of Mr. Hester's alleged performance issues, but Mr. Brauer's June 6, 2018 email to James Herman was in retaliation for Mr. Hester filing complaints against him between September 2017 and June 2018. Mr. Brauer did not write similar request to HR for the three other teachers whose teaching certificates were expired. (Ex. A p. 1).

Based on the foregoing, Defendant's reason for terminating Mr. Hester is pretext and Mr. Brauer's discriminatory and retaliatory animus toward Mr. Hester is evidence in his attempt to not have Mr. Hester's teaching credentials renewed. (Id.).

B.      **Plaintiff's Complaints Were Not "General Grievances."**

Defendant asserts that Mr. Hester's allegations of abuse against Mr. Brauer are general grievances (ECF 70-1, p. 12). Mr. Hester's allegations against Mr. Brauer are not minor grievances, but cite specific incidents of verbal abuse, physical abuse, mental abuse, and unwelcomed comments about his sexual orientation. (Id.).

Defendant fails to mention the March 2017 incident where Mr. Brauer curls two of his fingers inward toward his palm and with his palm faced down, and in a hostile tone and beckons Mr. Hester toward him. (ECF 24-5, p. 24; Ex. C: Disposition of the 4170 Complaint). Inn October or November 2017, Mr. Brauer grabbed Mr. Hester's sleeve and yanks at him during a fire drill. (ECF 24-5, p. 25). When. Mr. Hester reports these incident to Mr. Screven, Mr. Scriven dismisses him with the wave of his hand and states: "Mr. Brauer must have been having a bad morning." *(Id.)*. On August 28, 2018, Mr. Brauer yelled at Mr. Hester after he learned that Mr. Hester was late to submit his syllabus. (Id.). Further, in 2018, Mr. Brauer whispered in Mr. Hester's ear: "You know we're paying you for this, don't you," as he saw that the Mr. Hester's class was causing a commotion. (*Id.*). Throughout his employment, Mr. Hester felt threatened, intimidated, and scared of Mr. Brauer. Plaintiff felt further intimidated by Mr. Brauer who used the word "oral" in a sexually suggestive way, when he referred to the oral part of the exam that Mr. Hester administered to his student. (ECF 24-5, p. 27).

C.      **Defendant Created a Hostile and Harassing Work Environment by Failing to Discipline Students Who Harassed Plaintiff or By Returning Harassing Students to Plaintiff's Classroom.**

In addition to Mr. Hester's allegations of abuse against Mr. Brauer, Mr. Hester experienced abuse by students from the school. Mr. Brauer and Mr. Screven dismissed Mr. Hester's complaints. Specifically, in March or April 2018, Mr. Hester was physically

6

assaulted by a student ramming his shoulder into Mr. Hester's back. (ECF 24).While Mr. Hester wrote the student up on a PS-74, both Mr. Mr. Screven and Mr. Brauer refused to discipline the student because the incident was not caught on camera. (*Id*.).

In May 2018, Mr. Hester was misgendered by a student, by being referred to as "she" and "miss" and called "faggot." Mr. Hester reported the incident to Mr. Brauer and Mr. Screven, and in response Mr. Brauer said " what you do in your personal time is none of our business." (*Id*.). This statement on its face is discriminatory.

In the most severe discriminatory incident in Mr. Hester's tenure with Defendant, another student ridiculed Mr. Hester for being gay and then took to social media and threatened to kill gay and Jewish teachers. (ECF 26-1 p. 17; Ex. E: Threats). The social media post was accompanied by a photograph of a gun (*Id*.). While the student was suspended, after the suspension the student who made the derogatory and threatening discriminatory comments was returned to Mr. Hester's classroom for the rest of the year. The district does not deny this. (ECF 26-1 p. 17: Ex. E: Threats).

## III.   LEGAL STANDARD

Summary judgment is appropriate **only** where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a)*. The burden of demonstrating the absence of any genuine issue of material fact rests with the moving party. The Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. A court must "draw all

justifiable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded to particular evidence." *Venugopal v Shire Labs.*, 334 F. Supp. 2d 835, 840 (D. Md. 2004) (quoting *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991). As such, summary judgment is applicable when the moving party exhibits, by using "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, … interrogatory answers, or other materials" that no genuine dispute of material fact exists[,] and the moving party is entitled to judgment as a matter of law." *Md. R. 2-501 (a); See Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).

Further, "Courts must take special care when considering a motion for summary judgment in an employment discrimination case because 'motive often is the critical issue,' and "summary judgment is seldom appropriate in cases where in particular states of mind are decisive as elements of [a] claim or defense." *Derickson v. Circuit City Stores,* 84 F. Supp. 2d 679, 684 (D. Md. 2000) (quoting *Ballinger v. North Carolina Agric. Extension Serv.*,815 F.2d 1001, 1005 (4th Cir. 1987).

## IV.  ARGUMENT

### A.  PCGPS Waives Sovereign Immunity Because Its Employees' Acts Were Made with Malice, Gross Negligence, and Outside the Scope of Employment.

The issue as to whether Mr. Hester's claims should be barred based on sovereign immunity is moot. PCGPS's, its agents', and employees' acts, or their failure to act, to protect Mr. Hester from unlawful discrimination was not done within the scope of their employment, but were actions of negligence and malice. Pursuant Md. Code Ann., Cts. & Jud. Proc. § 5-522 to waive immunity they must first act within the scope of the public

duties of the State personnel. Second, the actions must be made without malice or gross negligence. *See Francis v. Maryland*, No. CV ELH-21-1365, 2023 WL 2456553, at *26 (D. Md. Mar. 10, 2023) ("Thus, compliance with the MTCA's notice requirement is not necessary in a suit against individual State personnel in which it is sufficiently alleged that the defendants acted with malice or gross negligence."); *Jordan v. Davis*, No. CV ELH-22-1541, 2023 WL 2478862, at *23 (D. Md. Mar. 13, 2023) ("[T]he same standards of malice and gross negligence govern State common law torts and violations of State constitutional rights.") (quotation marks omitted).

Here, Mr. Brauer acted outside of the scope of his duties and acted out of malice and gross negligence based upon the discriminating actions he took against Mr. Hester. Mr. Hester outlines in his Employment Opportunity Commission ("EEOC") charging document that Mr. Hester's actions were in violation of federal law, specifically, Title VII of the Civil Rights Act of 1964. (Ex. B, pgs.1-2). He stated that he was discriminated based on his race, sex, religion, and national origin, and that he had experienced retaliation. (*Id.*). He goes on to detail how in or around September 2017, he filed an internal complaint, alleging that he was being harassed by Mr. Brauer due to his sexual orientation. (*Id.*) He stated that in or around November 2017, he told Principal Mehmet Gunes that he did not feel safe at the school as a gay teacher. (*Id.*). Between March 2018 and June 2018, Mr. Brauer issued Mr. Hester five write-ups for lateness, but t similarly situated employees including Crystal Swann and Bailey Lawrence, had greater attendance and tardiness issues but were not disciplined. (*Id.*) On or about April 2018,Mr. Hester complained to Mr. Brauer that he was being subjected to harassment by students based on his sexual orientation. The students called Mr. Hester "faggot" and "gay," but

Mr. Brauer failed to take any corrective action against the students, and the harassment continued. (*Id.*) Thus, Mr. Brauer's failure to take action was done with malice and was grossly negligent as Mr. Hester's supervisor and the acting Assistant Principal. Thus, his actions and/or failure to take actions was outside the scope of his employment. Consequently, PGCPS cannot use sovereign immunity as a defense and damages are no longer capped.

Furthermore, while Md. Code Ann., Crts & Judicial Proc. Art. § 5-518(c) prohibits a county board of education from raising a defense of sovereign immunity "to any claim of $400,000 or less, and Mr. Hester asserts damages of $500,000 (ECF 1) in his initial filing, the Federal Court has the authority and jurisdiction to lower Mr. Hester's damages to that Defendant cannot assert this sovereign immunity defense. *Lee v. Prince George's Cnty. Pub. Sch.,* 666 F.3d 244, 248 (4th Cir. 2012).

### B.   Mr. Hester Experienced A Discriminatory And Hostile Work Environment Throughout His PGCPS Employment.

There are several instances, detailed in the Amended Complaint, that show how Mr. Hester worked in a hostile work environment based on his sex. A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Boyer-Liberto v. Foutainbleau Corp.*, 786 F3d 264, 277 (4th Cir. 2015). In order to prove this assertion, Mr. Hester must show that "the conduct was: 1.) unwelcome, 2.) based on the plaintiff's sex, 3.) sufficiently severe or pervasive to alter the plaintiff conditions of employment and create an abusive work environment; and 4.) imputable to the employer." *Webster v. Chesterfield Cty. v. School Bd.*, 38 F.4th 404, 410 (4th Cir. 2022).

10

### i.      Mr. Brauer's Created a Hostile Work Environment by Engaging in Physical and Verbal Assaults against Mr. Hester Based on His Sexual Orientation.

In the Amended Complaint, Mr. Hester states that there were numerous times where Mr. Brauer engaged in physical and verbal assaults and failed to take corrective action against students who physically and verbally assaulted Mr. Hester based on his sex. (ECF 24). In *Ziskie* the Court established that in order to find that a hostile work environment existed, based upon an individual's sex, the claimant must demonstrate "that a reasonable jury could see the hostility as a product of gender animus rather than the kind of personality conflict that pervades many [in] a workplace. *Ziskie v. Mineta*, 547 F.3d 220, 227 (4th Cir. 2008). Ultimately, the Court of Appeals in *Ziske* remanded the matter back to District Court, because there was no evidence presented involving sexual related conduct based on her sex. *Id.* That was in contrast to *Jennings,* where a male soccer coach incessantly talked about his female players' sex lives and bodies, or the plaintiffs in *Spriggs* or *Sunbelt Rentals,* who were subjected to barrages of demeaning epithets. *See Jennings v. University. of N. Carolina,* 482 F.3d 686, 691-94 (4th Cir. 2007); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184-86 (4th Cir. 2001); *EEOC. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 310-12 (4th Cir. 2008).

Here, there were a couple of instances where Mr. Hester experienced working in a hostile environment because he identified as a gay male. In May 2018, Mr. Hester was misgendered by a student, who referred to him as "she" and "miss" and called "faggot." (ECF 24-5, p. 27). Mr. Hester addressed this matter to Mr. Brauer and Mr. Screven, and in response they stated that what Mr. Hester did in his personal time was his business and took no corrective action against the student. (*Id.*) Again, this comment is not only dismissive but discriminatory on its face. Also, Mr. Brauer used the word "oral" in a

11

sexually suggestive way, when he referred to the oral part of the exam that Mr. Hester administered to his students.

Based on the above-mentioned accounts, Mr. Brauer's and Mr. Screven's actions are imputable to Defendant because the workplace was clearly hostile based on Mr. Hester's sexual orientation.

### ii.    Mr. Brauer's Conduct Towards Mr. Hester Was Both Severe And Pervasive.

Mr. Brauer's offensive physical actions and comments to Mr. Hester were numerous and continuous throughout Mr. Hester's employment thus creating a severe and pervasive hostile work environment. To satisfy the "severe or pervasive" test for Title VII hostile work environment claims, a plaintiff must show that the environment was pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimidate, thus creating an abusive atmosphere. *EEOC v. Central Wholesalers,* Inc., 573 F.3d 167 (4th Cir. 2009); *See* Civil Rights Act of 1964, § 703(a)(1); *See also* 42 U.S.C.A. § 2000e–2(a)(1). The creation of the abusive environment must be both perceived subjectively and objectively. *EEOC*, 573 F.3d at 175. The court found that these elements were met, when the movant both experienced and expressed the emotional distress to a supervisory figure. *Id.* Here, Mr. Hester informed the PGCPS administrators of the harassment he experienced by both his students and Mr. Brauer in the complaint of harassment that he filed to PGCP Office of Equity Assurance in February 22, 2018, the EEOC Charge of Discrimination, and the Complaint for this matter. (Ex. B; ECF 24). By engaging in this protected activity, Mr. Hester satisfies the subjective element of the test.

For a court to determine whether an environment was "objectively severe or pervasive" it must look at all circumstances, including frequency of discriminatory

12

conduct, its severity, whether it is physically threatening or humiliating, or mere offensive utterance, and whether it unreasonably interferes with an employee's work performance; no single factor is dispositive, as real social impact of workplace behavior often depends on constellation of surrounding circumstances, expectations, and relationships which are not fully captured by simple recitation of words used or physical acts performed." *EEOC*, 573 F.3d at 176; *see* Civil Rights Act of 1964, § 703(a)(1); *see* 42 U.S.C.A. § 2000e–2(a)(1). "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed," *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

Here, in one instance both Mr. Hester and another teacher were explicitly named in the threat to kill all the gay and Jewish teachers at the school. (ECF 31, p. 20; Ex. E). Although Mr. Brauer knew of these death threats, he did not inform Mr. Hester of this act. (*Id.*) In another occasion, in March or April 2018, Mr. Hester was physically assaulted by a student ramming his shoulder into Mr. Hester's back. (ECF 24-5, p. 27). Even though Mr. Hester wrote the student up via a PS-74, both of his supervisors, Mr. Screven and Mr. Brauer, took no further action because they stated that the alleged act was not caught on camera. (*Id.*).

In addition to the harassment that Mr. Hester experienced by the students, he also experienced similar actions from Mr. Brauer. Namely, in one instance Mr. Brauer curled two of his fingers inwards towards his palm with his palm faced down, and a tone and posture that Mr. Brauer found to be hostile. (ECF 24-5, p. 24). In October or November

2017, Mr. Brauer grabbed Mr. Hester's sleeve during a fire drill. (*Id.* at 25). As a result of all this, Mr. Hester was diagnosed and treated with anxiety and post-traumatic stress disorder. *(*ECF 24-1, p.12). Considering the abuse that Mr. Hester experienced by his student, the lack of protection from administration, and abuse from Mr. Brauer there is sufficient basis to support a claim of a severe and pervasive hostile work environment.

### C.    PGCPS is Liable for the Harassment that Mr. Hester Experienced.

Because PGCPS failed to take remedial action to address the harassment that Mr. Hester experienced while employed, it is liable for the damages.. An employer may be held liable for a hostile work environment "if it knew or should have known about the harassment and failed to take effective action to stop it by responding with remedial action reasonably calculated to end the harassment." *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 498 (4th Cir. 2015). But if an employer takes action that results in the "cessation of the complained of conduct, liability must cease as well." *Spicer v. Commonwealth of Va., Dept. of Corrections*, 66 F.3d 705, 711 (4th Cir. 1995); *see also EEOC v. Xerxes Corp.*, 639 F.3d 658, 669–70 (4th Cir. 2011).

### i.    PGCPS Puts Abusive Student Back in Plaintiff's Classroom.

PGCPS should be held liable because they failed to protect Plaintiff from an ongoing hostile and harassing work environment. While the student who threatened Mr. Hester's life was suspended, the student was returned to Plaintiff's classroom for the rest of the school year. (ECF 26-1, p. 17; Ex. E). "A remedial action that effectively stops the harassment will be deemed adequate as a matter of law. On the other hand, it is possible that an action that proves to be ineffective in stopping the harassment may nevertheless be found reasonably calculated to prevent future harassment and therefore adequate."

14

*Knabe v. Boury Corp.*, 114 F.3d 407, 411–12 n. 8 (3d Cir.1997) (alteration omitted); *see also Central Wholesalers*, 573 F.3d at 178 (noting that we also consider whether the employer took "increasingly progressive measures to address the harassment when its [initial] responses proved ineffective").

Here, there were multiples instances where the students exhibited discriminatory, hostile, and harassing behavior toward Mr. Hester. In March or April 2018, Mr. Hester was physically assaulted, by a student ramming his shoulder into Mr. Hester's back. (ECF 24-5, p. 27). Even though Mr. Hester wrote the student up, via a PS-74, his supervisors, Mr. Screven and Mr. Brauer took no further action to punish the student. They stated that they could not take any remedial action, because the alleged act was not caught on camera. (*Id.*) It was only a couple months later, in May 2018, when Mr. Hester was misgendered by students, by being referred to as "she" and "miss" and called "faggot." Mr. Hester reported this to Mr. Brauer and Mr. Screven, but they dismissed him out of hand. Mr. Brauer specifically stated: "what you do on your personal time is none of our business." (*Id.*).

Mr. Hester did his due diligence in ensuring his safety at school before filing complaints with PGCPS. Plaintiff wrote students up for their bad behavior via the PS-74, pursuant to district policy. (Ex. D; ECF 26-1). Mr. Brauer and Mr. Screven refuse to process them because there was not evidence but Mr. Hester's word. (ECF 26-1, p. 17). Defendant's claims that Mr. Hester failed to comply with the formal procedure, outlined in the Negotiation Agreement between Prince George's County Educators Association and the Board of Education Prince Georges County (CBA). Article 15, Classroom Management and Discipline, Section D, states:

15

> When in the judgement of the teacher a student's behavior makes operation of the class impossible, the teacher shall complete the appropriate discipline referral form and the student may be excluded from the class until the teacher and principal or the principles designee have held a conference… the conference should be held on or before the next school day do you know one member and the principal or principal's designee may I like to use an exchange of emails in lieu of the conference. The principal will decide if and when the student is to be returned to class.

*(* Ex. D).

Here, after being physically assaulted by a student in March or April 2018, and being verbally assaulted, by being referred to as "she," "miss," and "faggot" in May 2018, it was undeniably "impossible" for Mr. Hester to conduct his class, and the principal and administration should have intervened. (ECF 24-5, p. 27). In the April/March 2018 incident, Mr. Hester filed the Student Discipline Referral. (*Id).* In the document, Mr. Hester writes: , "the student aggressively ran into me twice." (*Id*.). Following that, Mr. Hester informed the "principle designees" Mr. Brauer and Mr. Screven. In response, he was told that because there was no video footage of the act and that they could not take any further action in the matter. (Id.).

Similarly, in the May 2018 incident, Mr. Hester informed the "principle designees," Mr. Brauer and Mr. Screven, of the taunting and verbal assaults he experienced from his students. In response, they told him that what he did during his personal time was his business. *(* ECF 24-5, p. 27). Thus, Mr. Hester did his due diligence in both instances and PGCPS did not, because there were no "conference['s] held on or before the next school day." (Ex. D; ECF 24-7, p. 2).

   **D. Mr. Hester Was Subjected To Retaliatory Actions From PGCPS's After Filing His Complaint with the  Office Of Equity Assurance On February 22, 2018.**

The causal connection and proximity between the actionable discrimination, hostile work environment, harassment complaint, and Mr. Hester's termination, supports his claims of retaliatory termination. PGCPS's reasons for terminating Mr. Hester are pretextual because he was terminated while his teaching certificate was being reviewed for renewal. In addition, there was a close proximity in time from when he filed the whistleblower lawsuit to when he was terminated. A Title VII retaliation claim may be established through the court obtaining direct evidence of retaliatory intent or through a burden shifting framework. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005) (citations omitted). First, the plaintiff bears the initial burden of establishing a *prima facie* case of retaliation. *Id.* Second, the burden then shifts to the defendant who is obligated to articulate a legitimate, non-retaliatory justification for the adverse employment action. *Id.* Third, if the defendant is successful and meets this burden, the onus is on the plaintiff to demonstrate that the non-retaliatory reason advance is mere pretext. *Id.* Step one was met, when, Mr. Hester filed the initial complaint. Step two, the response, was met because the Defendant filed the Motion for Summary Judgment. Presently, step three, and before this Court, we have to establish that the "non retaliat[ion] is mere pretext."

The court in *Price v. Thompson*, found that to overcome the burden of proving that the reason for termination advanced by Defendant was a pretext, the Plaintiff was not necessarily required to prove that she was a good supervisor. She needed only to prove that her lack of skill as a supervisor was not the cause of her termination. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir.2004) ("[T]he plaintiff can prove pretext by showing that the [defendant's] explanation is unworthy of credence or by offering other

forms of circumstantial evidence sufficiently probative of [retaliation].") (quotation marks omitted).

Here, despite Mr. Hester's termination from his position as a Spanish teacher, there were other actions that Mr. Brauer and the other members of the Board of Education, could have taken to maintain his employment in the county. Namely, there were other teachers who were in similar predicaments but were either given the option to either be a long-term substitute teacher or be hired at a charter school. (ECF 24-5, p. 9). Mr. Hester's co-teacher and several other teachers were given the option to become a substitute after not meeting the benchmarks set out by the school, and they were thus able to secure employment at CMIT. (*Id.*) The fact that Mr. Hester was not provided the same opportunities shows disparate treatment because he was terminated and not allowed to secure other employment with PGCPS.

### E.      Mr. Hester Has Suffered Significant Financial And Mental Harm As A Direct And Proximate Result Of Defendant's Unlawful Actions.

Mr. Hester, as a direct and proximate result of Defendant's unlawful discriminatory conduct and retaliation has suffered significant financial as well as mental harm. Throughout his career Mr. Hester has demonstrated a solid commitment to his growth and development in both his personal and professional life as an educator. He has worked at various educational institutions and shown a passion for teaching and a dedication to his students' learning and development. Throughout his career, he has been praised for his ability to engage students and foster a positive learning environment. Mr. Hester's family background is an integral part of his identity. He comes from a

18

supportive family, which has played a significant role in his personal and professional life.

The termination had a profound negative impact on Mr. Hester, both mentally and emotionally. This experience exacerbated his mental health condition, leading to increased anxiety and depressive symptoms. His medical records indicate a significant deterioration in his mental health following the termination, necessitating adjustments in his medication regimen. Specifically, Mr. Hester experienced heightened anxiety and depression post-termination, which required consistent medical attention and changes in his medication. The termination also had a severe emotional toll on Mr. Hester, as evidenced by his documented need for continuous psychiatric care.

Currently, before the Court, the Defendant is attempting evade accountability of their mistreatment of Mr. Hester, by attempting to block him from obtaining relief for significant harm and abuse that happened over a two-year period.

## V.    CONCLUSION

Base on the foregoing, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment in its entirety. Plaintiff has provided sufficient evidence to create disputed genuine issues of material facts regarding the discriminatory and retaliatory nature of Defendant's actions.


Respectfully submitted,


__/s/ Ike Kempa_____
Ike Kempa, Esq., Esq.
Deyka Williams Spencer, Esq.
The Spencer Firm, LLC.
2275 Research Blvd., Suite 450-92

19

Rockville, Maryland 20850
Email: ikempa96@gmail.com
Tele: (301) 637-2866
Fax: (866) 686-2126

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

THIS WILL CERTIFY that on this 17th day of June 2024, a copy of the foregoing

was filed via PACER CM/ECF and email  to:


Darryl G. McCallum
SHAWE ROSNTHAL LLP
One South Street, Suite 1800
Baltimore, MD 21202
Email: dgm@shawe.com

Dated: June 17, 2024                                      /s/ *Jana Thorson*

                                                         Jana Thorson, Paralegal